THE CHASE NATIONAL BANK OF THE CITY OF NEW YORK et al., as Executors and Trustees under the Will of CHARLES I. GILBERT, Deceased, et al., Appellants, *v.* MANUFACTURERS TRUST COMPANY, Defendant, and EDWARD H. HIRST, Defendant-Respondent.

First Department, January 29, 1943.

*Samuel Seabury* of counsel (*Dan Gordon Judge* with him on the brief; *Newman & Bisco,* attorneys), for appellants.

*Frederick Zorn* of counsel (*Lester Samuels* with him on the brief; *Kahn & Zorn,* attorneys), for respondent.

TOWNLEY, J. This action arises out of an agreement made January 8, 1940, between Charles I. Gilbert and Edward H. Hirst. On that date they were equal owners of the stock of certain corporations. They desired to assure the continuance of control in the survivor in case of the death of either. To accomplish this purpose, they entered into the agreement in suit. Gilbert has died and his executors and widow have brought this action against Hirst and the Manufacturers Trust Company as trustee to determine their rights under the agreement.

Under this agreement the stock of each was to be deposited with the Manufacturers Trust Company as trustee and on the death of either, the survivor was to purchase the stock of the other. The stock was to remain with the trustee until payment of the purchase price by the survivor. The purchase price was to be determined according to a formula stated in the agreement. Under this formula the purchase price was to be one-half of the book value of the corporations and one-half of the good will considered separate from the book value. The book value was to be fixed by the report of accountants. The value of the good will was to be determined in accordance with the following provisions of the contract: " The value of good will shall be arrived at as follows: The Stockholders agree to file with the Trustee from time to time and in no event more frequently than semi-annually, a statement of good will value jointly agreed upon and signed by both Stockholders. The last statement filed with the

Trustee prior to the death of one of the Stockholders shall be the final valuation of the good will and shall be binding upon all parties concerned, irrespective of the time which may elapse following the date of the filing of such statement and the death of the Stockholder.''

After the contract was made, Hirst and Gilbert filed with the trustee a statement that the then value of the good will was $160,000. More than six months after this statement was filed and at a time when as alleged in the complaint the value of the good will had increased to $375,000, Gilbert demanded that a new statement be filed representing this change in value. Hirst refused to sign such statement and has persisted in such refusal when later demand was made by Gilbert's executors.

The complaint alleges four causes of action. The first three represent different theories of construction said to be applicable to this contract. The fourth involves a separate contract made after Gilbert's death providing for the disposition of certain insurance policies taken out under the terms of the main agreement.

The first cause of action asks for a declaration that either of two situations obtains as follows:

'' SIXTEENTH: That by reason of such wrongful refusal of Edward H. Hirst to agree as to the true value of said stock, he is not entitled to receive the same upon payment of one-half of the book value of said corporations and one-half of the value of the good will shown by the statement filed with Manufacturers Trust Company by him and Charles I. Gilbert on January 8th, 1940.

'' SEVENTEENTH: That if said Edward H. Hirst is entitled to receive said stock at all, it is only upon payment of one-half of the book value of the assets of the above-mentioned corporations and one-half of the true value of the good will of said corporations at the time of the death of Charles I. Gilbert on May 12th, 1941.''

The relief demanded in the seventeenth paragraph, if on a trial the facts justify it, is permissible under the decision of *Mutual Life Ins. Co.* v. *Stephens* (214 N. Y. 488, 495) and *Matter of Fletcher* (237 N. Y. 440). In the latter case, Judge, now Chief Judge, LEHMAN, said (p. 448): '' The courts have always enforced such contracts where as in this case the provision for an appraisal could be regarded as incidental and subsidiary to the substantive part of the agreement and ' treating the method as a matter of form rather than substance, the courts have by a reference or otherwise determined the value for the purpose

of enforcing the contract according to its real spirit and purpose.' * * * The effect of failure to act by persons selected, under the provisions of a contract, to determine particular matters as a prerequisite to the assertion of rights under the contract and the effect of misconduct which vitiates a determination have been frequently considered by the courts * * *. In such contingency a party to the contract may enforce his rights thereunder by action as if there were no requirement for a prior determination of any fact which the court could itself determine in the action.''

The alternate relief asked for in paragraph sixteenth may also be justified under the decision of this court in *Fletcher* v. *Nicholas* (216 App. Div. 540). That case involved a later development of the same controversy involved in *Matter of Fletcher* (*supra*). This court in its opinion at p. 543 said:

'' Immediately after that decision [*Matter of Fletcher*] the present action was begun, plaintiff seeking to have the court declare that defendant Nicholas has no further interest in the stock and for the delivery of the same to plaintiff. The question is whether Nicholas by his conduct prevented the ascertainment of the valuation of the stock and thus lost his right to the option to purchase.

'' The Court of Appeals said on that subject: ' If the determination has not been made because of wrongful acts or refusal to proceed on the part of Mr. Nicholas, it might well be held that he has waived or forfeited any rights under the contract which might be based upon such valuation, and that Mr. Fletcher is entitled to the delivery of the stock free from any rights of Mr. Nicholas thereto; but only the court could pass upon this question.' * * * The record makes it clear that Nicholas has not only sought delay but has never had any desire to have the value of the stock fixed.

'' The trial court gave judgment for the plaintiff. We think the judgment was required by the justice of the situation and is entirely consistent and correct in law.''

The agreement herein litigated is based on the idea that the statement of value existing at the time of the death of one of the business associates should substantially represent the agreed value of the good will. The contract, however, also contemplated periodical revaluation. It was obviously never understood that one of the parties could in the first place agree on a valuation of good will and then refuse any further agreement. If it can be shown that at the time the demand was made for a new valuation the original one was substantially incorrect because of interim

changes in value, then as the agreement plainly contemplated, a new one should be executed. The defendant's refusal to execute such new valuation constituted a breach of the contract which in no event would entitle him to receive the stock except upon payment of its fair value determined upon a trial.

It is possible that on the trial of this action the testimony may establish a need for a declaration either under paragraph sixteenth or paragraph seventeenth above quoted. The first cause of action is, therefore, sufficient.

The second cause of action presents a claim that this contract amounts merely to " an agreement to agree " upon a value and is, therefore, unenforceable. It is apparent that whatever might have been said in support of this theory before any valuation was made, after a valuation had been stated and the contract partly performed in that respect, there remained no uncertainty about the meaning of the parties. The agreement to agree in short had ripened into an agreed valuation. The question, therefore, is not whether the contract is null and void because of uncertainty but what is the remedy in case of a refusal to make further valuation. We hold, therefore, that the second cause of action was properly dismissed.

The third cause of action presents the claim that the agreement in question is testamentary in character and unenforceable because it is not executed in accordance with the requirements of the statute relating to wills. The agreement between Gilbert and Hirst had all the essentials of a contract. It was an arrangement *in præsenti* binding on Gilbert which controlled the ultimate ownership of his stock and involved a present transfer to the trustee named in the agreement. Its character is not changed by the fact that some of its terms are not to be carried out until Gilbert's death. In *Ga Nun* v. *Palmer* (216 N. Y. 603, 609) the court in its opinion said: " It makes no difference in such circumstances that part of the reward is payable after death. The character of the promise is not changed by the time fixed for its performance (*Hegeman* v. *Moon,* 131 N. Y. 462; *Carnwright* v. *Gray,* 127 N. Y. 92; *Robb* v. *Washington & Jefferson College,* 185 N. Y. 485)."

The claim presented by this cause of action is not sustained by the agreement and was properly dismissed.

The fourth cause of action is based upon a contract between the widow, the executors and trustees and Hirst. Under the original contract provision was made that each of the parties should insure the life of the other, the proceeds of the insurance to be applied on account of the purchase price of the stock. Under

the contract involved in this cause of action, Gilbert's widow was to receive the proceeds of the $50,000 policy on Gilbert's life and Hirst was to retain the policy upon his own life. There is nothing in this contract as pleaded which renders it either illegal or invalid. Whether the full terms of the agreement pleaded, in the light of the circumstances surrounding its execution, justify the conclusion sought to be attached to it need not now be determined. A declaration of rights is necessary to protect the trustees. The fourth cause of action as pleaded in sufficient.

The judgment dismissing the complaint should be reversed and the order should be modified to the extent of denying the motion to dismiss the first and fourth causes of action, and so as modified, the order should be affirmed.

MARTIN, P. J., GLENNON, UNTERMYER and DORE, JJ., concur.

Judgment dismissing the complaint unanimously reversed, with costs to the appellants, and the order appealed from modified to the extent of denying the motion to dismiss the first and fourth causes of action, and as so modified affirmed.